UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DEMOCRACY FORWARD FOUNDATION,**<br><br>Plaintiff,<br><br>v.<br><br>**CENTERS FOR MEDICARE & MEDICAID SERVICES,**<br><br>Defendant. | Civil No. 18-635 (JDB) |

## MEMORANDUM OPINION

Plaintiff Democracy Forward Foundation brought this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against defendant Centers for Medicare & Medicaid Services ("CMS") seeking records relating to CMS's Affordable Care Act enrollment outreach. Now before the Court are the parties' cross-motions for summary judgment. At issue is whether CMS properly withheld certain records from disclosure pursuant to FOIA Exemption 5. For the reasons explained below, except as to one subset of documents, the current record is not sufficient to warrant summary judgment for either side. As a result, CMS's motion for summary judgment will be granted in part and denied in part without prejudice, and Democracy Forward's cross-motion for summary judgment will be denied without prejudice. The Court will require CMS to supplement its withholding justifications before submitting any future summary judgment motion.

## Background

In February 2018, Democracy Forward submitted a FOIA request to CMS seeking records "concerning CMS's decisionmaking as it relates to the agency's Affordable Care Act outreach efforts." Compl. [ECF No. 1] ¶ 6. Specifically, Democracy Forward sought "[a]ll correspondence and communications, including attachments," between certain senior CMS employees, as well as

1

between those CMS employees and persons employed by the consulting firms Weber Shandwick and Powell Tate. Id. When CMS failed to respond, Democracy Forward filed this FOIA suit on March 20, 2018, to enforce its request. See id. ¶ 10.

Thereafter, on August 10, 2018, CMS released the first of two tranches of documents, consisting of "2,278 pages of which 975 pages were released in full, 998 pages were withheld in full and 405 pages were withheld in part." Decl. of Hugh Gilmore ("Gilmore Decl.") [ECF No. 18-2] ¶ 10. The second tranche was released on January 2, 2019, consisting of "762 pages, of which 70 pages were released in full, 518 pages were withheld in full and 174 pages were withheld in part." Id.

Both parties have since cross-moved for summary judgment. See Def.'s Mot. for Summ. J. [ECF No. 18]; Pl.'s Cross-Mot. for Summ. J. [ECF No. 25]. As has become clear from the subsequent briefing, Democracy Forward challenges only a small subset of CMS's withholdings under FOIA Exemption 5. See Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. & in Supp. of Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Mem.") [ECF No. 24] at 4 n.2.

## Legal Standard

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Summary judgment is appropriate when the pleadings and evidence demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

It is the agency's burden to prove that it has complied with its obligations under FOIA. See U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989). To determine whether an agency has carried its burden, the district court may rely on agency affidavits, declarations, or Vaughn indexes that demonstrate the adequacy of the search for responsive records and the

applicability of any claimed exemptions. See Morley v. CIA, 508 F.3d 1108, 1116 (D.C. Cir. 2007); Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). When weighing these documents and other evidence in the record, the Court will review de novo the agency's determination that information requested through FOIA is subject to one of that statute's exemptions. See 5 U.S.C. § 552(a)(4)(B). And "[a]t all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

**Discussion**

Democracy Forward challenges CMS's withholding of three documents or sets of documents: (1) a "Final Report" on the Healthcare.gov 2016–2017 Open Enrollment Campaign, prepared by Weber Shandwick, Index of Contested Holdings ("Vaughn Index") [ECF No. 18-3] at 23 (Bates 2067-2191); (2) several attachments to a July 11, 2017 meeting invite to discuss Open Enrollment, Suppl. Index of Contested Holdings ("Suppl. Vaughn Index") [ECF No. 18-4] at 6 (Bates 2366-2431); and (3) communications between CMS officials and employees of Nahigian Strategies, a public relations firm, Suppl. Vaughn Index at 3, 6–12, 17–18; see Pl.'s Mem. at 2 (listing relevant Bates numbers).

CMS seeks to withhold each of these three document categories under FOIA Exemption 5. See Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") [ECF No. 18] at 6–7. Exemption 5 applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "Courts have construed this exemption to encompass the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context, including materials which would be protected under the attorney-client privilege, the attorney work-product privilege,

3

or the executive deliberative process privilege." Rockwell Int'l Corp. v. U.S. Dep't of Justice, 235 F.3d 598, 601 (D.C. Cir. 2001) (quoting Formaldehyde Inst. v. Dep't of Health and Human Servs., 889 F.2d 1118, 1121 (D.C. Cir. 1989)).

Here, CMS invokes the deliberative process privilege. See Def.'s Mem. at 6–9. In the FOIA context, the deliberative process privilege applies to inter- or intra-agency documents that are both (1) predecisional and (2) deliberative. See Baker & Hostetler LLP v. U.S. Dep't of Commerce, 473 F.3d 312, 321 (D.C. Cir. 2006). A communication is pre-decisional if it "occurred before any final agency decision on the relevant matter." Nat'l Sec. Archive v. CIA, 752 F.3d 460, 463 (D.C. Cir. 2014). And a communication is deliberative if it "is intended to facilitate or assist development of the agency's final position on the relevant issue." Id.

The D.C. Circuit has extended the deliberative process privilege to documents prepared for an agency by outside consultants, in what it calls the "consultant corollary." See Nat'l Inst. of Military Justice v. U.S. Dep't of Defense, 512 F.3d 677, 685–86 (D.C. Cir. 2008); see also Dep't of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 10 (2001) (noting that some circuits have adopted the consultant corollary because documents prepared by consultants "play[] essentially the same part in an agency's process of deliberation as documents prepared by agency personnel"). For the consultant corollary to apply, "the outside consultant cannot 'represent an interest of its own, or the interest of any other client.'" Ctr. for Pub. Integrity v. U.S. Dep't of Energy, 393 F. Supp. 3d 86, 92 (D.D.C. 2019) (quoting Klamath, 532 U.S. at 11). Instead, the consultant's "only obligations [must be] to truth and its sense of what good judgment calls for, and in those respects the consultant functions just as an employee would be expected to do." Klamath, 532 U.S. at 11.

1. **The Final Report**

The Court concludes that CMS has shown that the Final Report generally falls within the ambit of Exemption 5 but has failed to show that its segregability analysis was adequate. CMS supports its withholding of the Report with declarations from Hugh Gilmore, Director of the FOIA Group at CMS's Office of Strategic Operations and Regulatory Affairs. Gilmore states that the Final Report is "guidance reflecting the deliberation of [Weber Shandwick] to assist CMS in its decisionmaking relating to enrollment research, analytics analysis, audience targets, and content of messages." Suppl. Decl. of Hugh Gilmore ("Suppl. Gilmore Decl.") [ECF No. 26-2] ¶ 8. As such, Gilmore asserts that CMS properly withheld the Report because it "reflect[s] information developed by a consultant for purposes of providing advice to assist CMS on media strategies regarding enrollment for the health insurance marketplace." Id. ¶ 9.

As a preliminary point, although Democracy Forward does not challenge the withholding of the Final Report on this ground, the Court determines that the consultant corollary applies here. The Gilmore declaration states that Weber Shandwick was in a "consultant relationship with CMS for the purpose of advising on the [CMS] Office of Communications activities." Gilmore Decl. ¶ 13; see Suppl. Gilmore Decl. ¶ 9–10 (noting that Weber Shandwick was "retained to provide advice to the agency" and "assist CMS in its decisionmaking"). The fact that CMS solicited advice from Weber Shandwick weighs in favor of application of the corollary, and nothing in the declarations suggests that Weber Shandwick had any interest other than CMS's in mind when providing that advice. Cf. Ctr. for Pub. Integrity, 393 F. Supp. 3d at 92–93 (concluding that there was not enough information to decide whether contractor represented interests of the agency or its own interests where declarations suggested that "contractors may have had at least some interest in the Department's decisions").

Next, the declarations are sufficient to support CMS's assertions that the Final Report is both predecisional and deliberative. The Gilmore declarations make clear that the Final Report, temporally, <u>preceded</u> CMS's "decisions" as to enrollment research, audience targets, and so forth. According to the declarations, the purpose of the Report was to provide advice on any <u>future</u> decisions on those topics. <u>See</u> Gilmore Decl. ¶ 16 (stating that the Report "assist[ed] CMS in making a final determination how to proceed"); <u>cf.</u> <u>Abtew v. U.S. Dep't of Homeland Sec.</u>, 808 F.3d 895, 898 (D.C. Cir. 2015) (concluding that document was predecisional because it "was merely a recommendation to a supervisor," and the supervisor, not the author of the document, "made the final decision"). Hence, the Report was predecisional. Similarly, it was deliberative because it was "written as part of the process by which" CMS could make final decisions. <u>Id.</u>

Democracy Forward presents three arguments against CMS's assertion that Exemption 5 protects the Final Report. The first two are unavailing, but the Court agrees with the third. First, Democracy Forward argues that CMS has failed to identify a specific "decision" to which the Final Report contributed. Pl.'s Mem. at 5. However, this contention misunderstands the purpose of the privilege. As the D.C. Circuit has stated:

> Any requirement of a specific decision <u>after</u> the creation of the document would defeat the purpose of the exemption. At the time of writing the author could not know whether the decisionmaking process would lead to a clear decision, establishing the privilege, or fizzle, defeating it. Hedging his bets, he would be drawn into precisely the caution, or the Aesopian language, that the exemption seeks to render unnecessary. . . . Thus it is no surprise that the Supreme Court [has] noted that the exemption aimed at protecting the decisional <u>process</u>, that many processes might not "ripen into agency decisions," and that the exemption does <u>not</u> "turn[] on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared."

<u>Access Reports v. U.S. Dep't of Justice</u>, 926 F.2d 1192, 1196 (D.C. Cir. 1991) (quoting <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 151 n.18 (1975)). Here, CMS has identified the relevant decisionmaking process—"media strategies regarding enrollment for the health insurance

6

marketplace," Suppl. Gilmore Decl. ¶ 9—and the role that the Final Report played in that process—an advisory one, id. (noting Report was "developed . . . for the purpose of providing advice"). That is sufficient. See Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors, 762 F. Supp. 2d 123, 135–36 (D.D.C. 2011) ("[E]ven if an internal discussion does not lead to the adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process."); cf. Judicial Watch v. U.S. Postal Serv., 297 F. Supp. 2d 252, 266 (D.D.C. 2004) (concluding that merely identifying a document as a "draft press release" is not sufficient to allow the court to determine whether it is predecisional and deliberative).

Second, Democracy Forward argues that the Final Report is postdecisional, not predecisional, based mainly on the fact that the Report is labeled "Final." Pl.'s Mem. at 8–9. But, as CMS points out, the fact that the Report is final from the consultant's perspective says nothing about whether a decision has been made by CMS. Reply Mem. in Support of Def.'s Mot. for Summ. J. & in Opp. to Pl.'s Cross-Mot. ("Def.'s Reply Mem.") [ECF No. 26] at 3.

Third, Democracy Forward argues that CMS has failed to establish that it conducted an adequate segregability analysis. Reply in Support of Pl.'s Cross-Mot. for Summary Judgment ("Pl.'s Reply Mem.") [ECF No. 28] at 5. The Court agrees. FOIA requires agencies to "take reasonable steps necessary to segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A)(ii)(II). For instance, even where the deliberative process privilege applies broadly to a document, as here, the privilege does not generally "protect factual material," though that material "may sometimes be withheld if its disclosure would expose the deliberative process." Gosen v. USCIS, 118 F. Supp. 3d 232, 243 (D.D.C. 2015) (citing Nat'l Sec. Archive, 752 F.3d at 465); see Mapother v. Dep't of Justice, 3 F.3d 1533, 1539–40 (D.C. Cir. 1993) (suggesting that

7

factual material "assembled through an exercise of judgment" may be protected, where a mere factual "inventory, presented in chronological order" would not be). Or a recommendation to an agency "may not fall under the deliberative-process privilege if it is later 'adopted . . . as the agency position on an issue or is used by the agency in its dealings with the public.'" Gosen, 118 F. Supp. 3d at 244 (quoting Coastal States Gas Corp v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980)).

Here, CMS has done too little to demonstrate to the Court that it has adequately analyzed the Final Report for segregable information. The Vaughn index says not a word about segregability, and the Gilmore declarations "do[] not improve things." STS Energy Partners LP v. FERC, 82 F. Supp. 3d 323, 331 (D.D.C. 2015). The first declaration merely states that the Final Report was advisory, and that "[t]o the extent these reports reflected factual information, such information was inextricably intertwined with the deliberative nature of the report and could not be reasonably segregated." Gilmore Decl. ¶ 16. The second declaration adds almost no meaningful information to the first: it says only that CMS concluded that the Final Report's "data analytics and analysis . . . could be misinterpreted" if disclosed, and that "disclosure of the data analytics would identify the type [of] data . . . considered significant to CMS's decisionmaking process." Suppl. Gilmore Decl. ¶ 10. These statements "are wholly conclusory . . . , and conclusions, without more, will not cut it under FOIA." STS Energy Partners LP, 82 F. Supp. 3d at 337. The document's title, "Healthcare.gov 2016–2017 Open Enrollment Campaign Final Report," Vaughn Index at 23, as well as its length—over 120 pages—suggest to the Court that a close examination of the Report may reveal at least some factual information that would not provide any "meaningful insight into [CMS's] judgment or the deliberative process," Gosen, 118 F. Supp. 3d at 244, or some recommendations that the agency later adopted, id. But the Court has

8

no way to evaluate, based on the current record, whether any portions of the Final Report fall into these or other non-exempt categories.

Therefore, the Court will require CMS to re-assess the Final Report and either disclose all reasonably segregable portions of non-exempt material or provide the Court with more specific information justifying its withholding of the <u>entire</u> Report.

**2. The July 11, 2017 Meeting Attachments**

For much the same reasons as stated above, the Court concludes that Exemption 5 applies generally to the July 11, 2017 meeting attachments. The attachments are Microsoft PowerPoint slides that were developed by Weber Shandwick (to which the consultant corollary is again applicable) from the Final Report to "inform the CMS leadership about the outreach lessons for open enrollment to inform future decisionmaking by the agency as well as setting forth goals and milestones for proposed agency action well into November and December [of 2017]." Suppl. Gilmore Decl. ¶ 11. The attachments were thus predecisional, because they preceded any ultimate outreach decision, and deliberative, because they "assist[ed] development of the agency's final position on the relevant issue." <u>Nat'l Sec. Archive</u>, 752 F.3d at 463. But, as with the Final Report, the Court determines that CMS has not met its burden with respect to its segregability obligations. The <u>Vaughn</u> indexes as to the attachments are again silent on segregability, and the declarations contain nothing more than conclusory assertions that no portions of the attachments are reasonably segregable, <u>see</u> Suppl. Gilmore Decl. ¶ 11 (stating that a release of any information from the meeting attachments "would result in a chilling effect for candor and frank information in presentations to CMS leadership"). These sorts of bare assertions will not do where it is the <u>agency's</u> burden to show that it has complied with its FOIA obligations. See <u>Tax Analysts</u>, 492 U.S. at 142 n.3.

9

Thus, the Court will require CMS to re-assess the July 11, 2017 meeting attachments and either disclose all reasonably segregable portions of non-exempt material or provide the Court with more specific information justifying its withholding of the attachments in their entirety.

### 3. The Nahigian Communications

Finally, Democracy Forward argues that CMS has failed to show that the consultant corollary applies to the firm Nahigian Strategies, and thus certain communications between CMS and Nahigian were improperly withheld. Pl.'s Reply Mem. at 7. Democracy Forward contends, first, that CMS has failed to establish that Nahigian "had no individual interests to promote in their submissions" to CMS. Id. (quoting Nat'l Inst. of Military Justice, 512 F.3d at 683). But as the Court has already noted, where an agency has solicited the advice of firms such as Nahigian, and nothing in the agency's declarations or put forward by the plaintiff suggests that the firm served any interest other than the agency's, the consultant corollary is generally applicable. As a result, Gilmore's statement that "Nahigian Strategies was a sub-contractor" whose "purpose" was to "assist[] the CMS Office of Communications" with "provid[ing] administrative guidance in relations with CMS leadership," Suppl. Gilmore Decl. ¶ 6, is sufficient to merit application of the corollary.

Democracy Forward next contends that the challenged communications here were not between just CMS and Nahigian, but also included another participant, "Brett O'Donnell," whose email address is "brett@odacommunications.com." Pl.'s Reply Mem. at 8. Hence, Democracy Forward argues, because CMS has never explained who Brett O'Donnell is, it has failed to establish that the consultant corollary applies to these communications. The Court agrees and concludes that, based on the information before it, it cannot determine whether CMS has satisfied the threshold requirement for asserting the deliberative process privilege over these

communications—namely, that the consultant corollary applies to Brett O'Donnell. For this reason, the Court will deny CMS's motion for summary judgment as to items that include Brett O'Donnell and allow CMS to include in any future motion another declaration addressing this issue. Cf. Ctr. for Pub. Integrity, 393 F. Supp. 3d at 93 (denying government's motion for summary judgment and allowing it to file a renewed motion where the court lacked sufficient information to determine applicability of consultant corollary). Likewise, because Democracy Forward has not demonstrated that Brett O'Donnell was <u>not</u> a consultant, the Court will deny Democracy Forward's cross-motion for summary judgment as to those items but allow it to include additional details in support of its claims in any future motion.

Because Democracy Forward has not challenged CMS's segregability analysis with respect to the Nahigian communications, the Court will grant CMS's motion for summary judgment as to those items that do not include Brett O'Donnell.

## **Conclusion**

For the foregoing reasons, the Court will grant in part and deny in part without prejudice CMS's motion for summary judgment and will deny Democracy Forward's cross-motion for summary judgment without prejudice. Moreover, the Court will require CMS to provide additional, more specific information to justify its withholding of the entire Final Report and all the July 11, 2017 meeting attachments and to explain the status of Brett O'Donnell. A separate order will be issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: <u>November 27, 2019</u>