**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DEMOCRACY FORWARD FOUNDATION,**<br><br>Plaintiff,<br><br>v.<br><br>**CENTERS FOR MEDICARE & MEDICAID SERVICES,**<br><br>Defendant. | Civil No. 18-635 (JDB) |

**MEMORANDUM OPINION**

Plaintiff Democracy Forward Foundation brought this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against defendant Centers for Medicare & Medicaid Services ("CMS") seeking records relating to CMS's Affordable Care Act enrollment outreach. The Court previously addressed the parties' motions for summary judgment in a Memorandum Opinion dated November 27, 2019, wherein the Court granted defendant's motion in part and denied it in part. See Democracy Forward Found. v. Ctrs. for Medicare & Medicaid Servs., 2019 WL 6344935, at *1 (D.D.C. Nov. 27, 2019). The Court granted only partial summary judgment because two questions remained insufficiently answered by CMS's two filed declarations: (1) whether certain communications sent to or from a person named "Brett O'Donnell"—who was otherwise unidentified—were exempt from disclosure under the "consultant corollary" to the deliberative process privilege; and (2) whether CMS had disclosed all reasonably segregable portions of a "Healthcare.gov 2016-2017 Open Enrollment Campaign Final Report" and several attachments to a July 11, 2017 meeting invite. Id. at *4–6. The Court noted that the parties could submit renewed motions for summary judgment but that CMS had to "supplement its withholding

1

justifications" to address the two remaining questions before submitting any additional motions. Id. at *1.  Now before the Court are the parties' renewed motions for summary judgment.

## Legal Standard

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  Summary judgment is appropriate when the pleadings and evidence demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

It is the agency's burden to prove that it has complied with its obligations under FOIA. See U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989).  "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting Miller v. Casey, 730 F.2d 773, 776 (D.C. Cir. 1984)).  The agency cannot rely on "conclusory and generalized allegations of exemptions."  Morley v. CIA, 508 F.3d 1108, 1115 (D.C. Cir. 2007) (quoting Founding Church of Scientology of Wash., D.C., Inc. v. NSA, 610 F.2d 824, 830 (D.C. Cir. 1979)).

## Discussion

As noted, the Court's previous decision resolved all issues in this case save two.  As to the first remaining question, relating to certain communications in which a "Brett O'Donnell" appears as a sender or recipient, the second supplemental declaration of CMS's Hugh Gilmore states that the consultant corollary applies to the Brett O'Donnell communications because O'Donnell "was on the Weber Shandwick consultant contract," under which "Weber Shandwick provided advice

to CMS with respect to communication strategies, administrative guidance, and coordination with CMS leadership." Second Suppl. Decl. of Hugh Gilmore ("Second Suppl. Decl.") [ECF No. 34-2] ¶ 5. Democracy Forward does not challenge this determination, stating that it "does not have a basis for contesting CMS's averments regarding Mr. O'Donnell." Pl.'s Mem. of Law in Opp'n to Def.'s Renewed Mot. for Summ. J. & in Supp. of Pl.'s Renewed Cross-Mot. for Summ. J. ("Pl.'s MSJ") [ECF No. 35] at 1 n.1. The Court agrees that the consultant corollary applies to the O'Donnell communications. See Nat'l Inst. of Mil. Justice v. U.S. Dep't of Def., 512 F.3d 677, 685–86 (D.C. Cir. 2008) (extending deliberative process privilege to documents prepared for an agency by outside consultants because "advice submitted by . . . temporary consultants" is similar in function and purpose to advice given by employees).

As such, only one question remains before the Court: whether CMS's second supplemental declaration, unlike its previous two declarations, demonstrates that the agency has met its burden with respect to its segregability obligations under FOIA. Democracy Forward challenges CMS's withholding of two documents or sets of documents in almost their entirety:[1] (1) a "Final Report" on the HealthCare.gov 2016–2017 Open Enrollment Campaign, prepared by Weber Shandwick, Index of Contested Withholdings ("Vaughn Index") [ECF No. 18-3] at 23 (Bates 2067-2191); and (2) several attachments to a July 11, 2017 meeting invite to discuss Open Enrollment, Suppl. Index of Contested Withholdings ("Suppl. Vaughn Index") [ECF No. 18-4] at 6 (Bates 2366-2431). In doing so, Democracy Forward argues that "CMS's latest supporting declaration . . . makes clear that CMS still has not met its burden to conduct an adequate segregability search and to explain

---

[1] Since the Court's previous opinion was issued, CMS has released to Democracy Forward a limited number of pages from the requested documents: (1) the cover page and five pages of the Final Report; and (2) the cover page and three pages of the July meeting invite. See Second Suppl. Decl. ¶¶ 8–9, 11. CMS states that these releases were "discretionary," because it "maintains that [the] information is subject to withholding under the deliberative process privilege." Id. at 9.

3

its withholdings sufficiently." Pl.'s MSJ at 5. CMS, on the other hand, argues that its new declaration is sufficiently detailed such that CMS has met its burden. Reply Mem. in Supp. of Def.'s Mot. for Summ. J. & in Opp'n to Pl.'s Cross-Mot ("CMS Reply") [ECF No. 39] at 2.

Segregability is analyzed using a burden-shifting framework. "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability." Johnson v. Exec. Office for U.S. Att'ys, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977)). "However, the agency is not required to provide so much detail that the exempt material would be effectively disclosed." Id. To make the requisite showing, the agency typically provides a Vaughn index and "a declaration attesting that the agency released all segregable material." Judicial Watch, Inc. v. U.S. Dep't of Justice, 20 F. Supp. 3d 260, 277 (D.D.C. 2014). Once this information is provided, the agency is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material." Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007). The plaintiff must then produce a "quantum of evidence" to rebut this presumption, at which point "the burden lies with the government to demonstrate that no segregable, nonexempt portions were withheld." Id.

The Court's previous opinion determined that CMS's declarations to that point, while establishing that the deliberative process privilege applied generally to the challenged documents, had made only conclusory statements of non-segregability that failed to provide a detailed justification for its withholding of the documents in full. See Democracy Forward Found., 2019 WL 6344935, at *4–5. This time around, however, the Court concludes that CMS's new declaration is sufficient to entitle it to a presumption that it complied with its segregability

4

obligations and that Democracy Forward has not produced a quantum of evidence to rebut that presumption.

As to the Final Report, Gilmore states that CMS has "conducted a line by line review of the remaining pages of the report and determined that there was no non-exempt material within those pages that could be meaningfully segregated." Second Suppl. Decl. ¶ 10. He further explains that the pages withheld "discuss the results of data from searches, analysis on which products worked best and which did not, weighing costs associated with the media concepts employed, and suggestions of why they were successful or why they were not," and that the pages offer "[l]essons learned" and "other recommendations which contained projections and forecasts for action in future [Affordable Care Act] enrollment campaigns." Id. This declaration is significantly more substantive and detailed than either of the previous submissions. The first declaration stated only that the Final Report was advisory, without any real elaboration, see Decl. of Hugh Gilmore ("Gilmore Decl.") [ECF No. 18-2] ¶ 16, and the second declaration added only that CMS had "reviewed the report again" and had determined that disclosure of the report could lead to the data therein being "misinterpreted," Suppl. Decl. of Hugh Gilmore ("Suppl. Decl.") [ECF No. 26-2] ¶ 10. Courts generally accept showings similar to the one that CMS has made on its third attempt as sufficient to apply the presumption of compliance, and this Court does as well. Cf., e.g., Am. Ctr. for Law & Justice v. U.S. Dep't of State, 330 F. Supp. 3d 293, 306 (D.D.C. 2018) (applying presumption where the government "provided a declaration stating that it conducted a 'careful, line-by-line review of each document' and released all segregable information"); Abdelfattah v. U.S. Immig. & Customs Enf't, 851 F. Supp. 2d 141, 146 (D.D.C. 2012) (applying presumption where the government stated that it had "reviewed [the challenged documents] line-by-line" and

provided a detailed Vaughn index and "declarations enumerating the reasons why each document was properly withheld" (quotation omitted)).

As to the July meeting invite, Gilmore once again states that CMS conducted "a line-by-line review" of the invite and attachments and concluded that "there was no non-exempt information that could be meaningfully segregated." Second Suppl. Decl. ¶¶ 12–13. He also describes each document associated with the meeting invite in some detail. See, e.g., id. ¶¶ 12 (explaining that one presentation attached to the meeting invite contains "Weber Shandwick's data, analysis, tactics, strategies, and rationale which was presented to CMS as a recommended approach"); 13 (explaining that a Word document and two other presentations contained "the recommended messaging communications to leadership," as well as "recommendations for certain activities and plans for outreach"). The new declaration contains significantly more detailed information than the previous declarations, which stated only that CMS had "re-examined" the July meeting invite and that any release would "result in a chilling effect for candor and frank information [when] presenting to CMS leadership." Suppl. Decl. ¶ 11. As with the Final Report, then, the Court concludes that CMS is entitled to the presumption of compliance with its segregability obligations for the July meeting invite.

In an attempt to rebut the presumption for both the Final Report and the July meeting invite, Democracy Forward offers two arguments. First, it argues that given CMS's description of the documents as containing "analysis" and "lessons learned," there must be some factual material that can be released as segregable. See Pl.'s MSJ at 9–10. And Democracy Forward is right that certain factual material, such as a mere "inventory, presented in chronological order," may not be protected by the deliberative process privilege. See Mapother v. Dep't of Justice, 3 F.3d 1533, 1539–40 (D.C. Cir. 1993). But it is equally well-settled that a document's culling or organization

of relevant facts, reflecting an "exercise of judgment as to what issues are most relevant" to the advice and recommendations contained in the document can be part of an agency's deliberative process. See Ancient Coin Collector's Guild v. U.S. Dep't of State, 641 F.3d 504, 513 (D.C. Cir. 2011); see also In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997) (noting that "purely factual" material may be "so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations"). Here, unlike in CMS's earlier declarations, which contained only boilerplate language that any facts were "inextricably intertwined with" deliberative material, Gilmore Decl. ¶ 16, CMS has now provided a detailed basis for its conclusion that any factual content cannot be meaningfully segregated from exempt material. See, e.g., Second Suppl. Decl. ¶¶ 10 (stating that "data and analytics" contained in the Final Report "reflect[] Weber Shandwick's research and assessment of information that Weber Shandwick considered to be significant . . . in assisting CMS in its decisionmaking" as to "future enrollment campaigns"); 13 (explaining that documents associated with July meeting invite contained data that was "intermingled with opinion on how it impacts enrollment increase, effectiveness, or costs results"). Given this more detailed explanation of why there is no reasonably segregable factual data contained in the challenged documents, the Court concludes that Democracy Forward's first argument is insufficient to rebut the presumption of compliance.

Democracy Forward's second argument is that CMS failed to consider whether any opinion material contained in the challenged documents was reasonably segregable. See Pl.'s MSJ at 6–7. Democracy Forward primarily contends that CMS failed to analyze whether, pursuant to the D.C. Circuit's opinion in Coastal States Gas Corp v. Dep't of Energy, 617 F.2d 854 (D.C. Cir. 1980), the challenged documents contained any information that was later "adopted . . . as the agency position on an issue," id. at 866. The parties disagree on just how broadly Coastal States

7

applies, with CMS arguing that it applies exclusively in the context of situations where an agency is using withheld documents "as secret law or working law," CMS Reply at 4, and Democracy Forward arguing that the secret-law context is just "one instance" of many where the Coastal States language applies, Reply in Support of Pl.'s Renewed Cross-Mot. for Summ. J. [ECF No. 40] at 4. Most courts, including this Court, have tended to favor CMS's view that Coastal States prohibits only agency attempts to "develop a body of secret law, used in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'" Sec. Fin. Life Ins. Co. v. Dep't of Treasury, 2005 WL 839543, at *7 (D.D.C. April 12, 2005); see, e.g., Gosen v. U.S. Citizenship & Immig. Servs., 118 F. Supp. 3d 232, 238 n.4 (D.D.C. 2015) (noting that where "there is no real fear of the government using the deliberative process privilege to hide a secret body of law," the primary concern behind Coastal States "is simply not an issue"); Pub. Emps. for Envtl. Responsibility v. U.S. Section Int'l Boundary & Water Comm'n, 839 F. Supp. 2d 304, 323 (D.D.C. 2012), affirmed in part and vacated in part on other grounds, 740 F.3d 195 (D.C. Cir. 2014) (stating that "where there is no concern that the [agency] is attempting to develop a body of secret law, the reasoning in Coastal States has no application" (internal quotation marks omitted)); Sec. Fin. Life Ins. Co., 2005 WL 839543, at *7 ("Cases that have addressed whether an agency informally adopted a predecisional document generally have focused on whether the documents are used by an agency as secret law or working law.").

Here, where there has been no argument by Democracy Forward in either its original or its renewed motion for summary judgment that CMS is withholding the Final Report or the July meeting invite in an attempt to develop a body of secret law, the Court agrees with CMS that Coastal States is largely inapplicable. In any event, even if Coastal States did apply more broadly,

Democracy Forward has proffered no quantum of evidence indicating that any recommendations contained in the challenged documents have been "adopted, formally or informally, as the agency position." Coastal States, 617 F.2d at 866; see Anguimate v. U.S. Dep't of Homeland Sec., 918 F. Supp. 2d 13, 20–21 (D.D.C. 2013) (placing the burden on plaintiff to show that the challenged documents had been adopted as the agency position or used as secret law). Moreover, to the extent that Democracy Forward argues that CMS simply did not evaluate the documents to see whether there was any reasonably segregable opinion material, this argument runs directly counter to the statements in the new declaration that CMS did, in fact, conduct "a line by line review" of the documents and determined that there was no material that could be meaningfully segregated—fact, opinion, or otherwise. See Second Suppl. Decl. ¶ 10–13. As a result, the Court concludes that Democracy Forward's second argument is also insufficient to rebut the presumption of compliance.

In sum, then, on the sole issue remaining before the Court—segregability—the Court concludes that CMS's second supplemental declaration entitles the agency to a presumption that it has complied with its FOIA obligations and that Democracy Forward has failed to rebut that presumption.

## Conclusion

For the foregoing reasons, the Court will grant CMS's renewed motion for summary judgment and deny Democracy Forward's renewed cross-motion for summary judgment. A separate order will be issued on this date.

/s/  
JOHN D. BATES  
United States District Judge

Dated: March 30, 2020